# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| KIM MCCLAIN-LEAZURE, et al., | ) |
| | ) |
|     Plaintiffs, | ) |
| | ) |
| v. | ) CIVIL ACTION 17-0144-WS-MU |
| | ) |
| NANCY A. BERRYHILL, etc., | ) |
| | ) |
|     Defendant. | ) |

## ORDER

This matter is before the Court on the named defendant's motion to dismiss. (Doc. 16). The parties have filed briefs and evidentiary materials in support of their respective positions, (Docs. 16, 22, 24-27), and the motion is ripe for resolution. After careful consideration, the Court concludes the motion is due to be granted.

## BACKGROUND

According to the complaint, (Doc. 1-1),[1] the lead plaintiff ("KML") was employed by the Social Security Administration ("SSA") as an Administrative Law Judge. Beginning in or about September 2012, KML experienced harassment, leading her to file a succession of EEO claims. These claims were resolved by settlement in October 2015. These events form the "background" and "context" of the case but are not the basis of the lawsuit. (*Id*. at 4-6).

---

[1] An "amended complaint" filed in state court prior to removal is instead a one-sentence amendment altering the name of the defendant. (Doc. 12-5).

The complaint sets forth four counts, all brought against the named defendant in her official capacity as SSA Commissioner.[2] Count I alleges that, since the settlement agreement ("the Agreement") was executed, SSA has committed the tort of outrage/intentional infliction of emotional distress in violation of Alabama law. (Doc. 1-1 at 6-9). Count II alleges that SSA breached its duty under Alabama's Employer's Liability Act. (*Id*. at 9-10). Count III alleges that SSA has violated the Agreement and thus has breached a contract in violation of Alabama law. (*Id*. at 10-15). Count IV is brought by KML's husband ("William") and asserts a claim for loss of consortium. (*Id*. at 15-16). The defendant seeks dismissal of all four counts pursuant to Rules 12(b)(1) and 12(b)(6).

**DISCUSSION**

A challenge under Rule 12(b)(1) can be either facial or factual. When a defendant mounts a factual challenge, "matters outside the pleadings, such as testimony and affidavits are considered." *McElmurray v. Consolidated Government*, 501 F.3d 1244, 1251 (11th Cir. 2007) (internal quotes omitted). "Since such a motion implicates the fundamental question of a trial court's jurisdiction, a trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case without presuming the truthfulness of the plaintiff's allegations." *Makro Capital of America, Inc. v. UBS AG*, 543 F.3d 1254, 1258 (11th Cir. 2008) (internal quotes omitted).

**I. Outrage**.

The defendant argues that Count I is due to be dismissed on grounds of sovereign immunity, preemption and failure to exhaust administrative remedies. The Court considers these arguments in turn.

---

[2] The complaint also lists several vaguely described fictitious defendants, none of which have been identified in the 15 months since suit was filed.

**A. Sovereign Immunity.**

"It is well settled that the United States, as a sovereign entity, is immune from suit unless it consents to be sued." *Zelaya v. United States*, 781 F.3d 1315, 1321 (11th Cir. 2015).[3] However, "[t]hrough the enactment of the FTCA, the federal government has, as a general matter, waived its immunity from tort suits based on state law tort claims." *Id*. The defendant argues that KML's outrage claim is among those excepted from this waiver by 28 U.S.C. § 2680(h). (Doc. 16 at 10 n.3; Doc. 27 at 4 n.3). If the defendant is correct, the Court lacks subject matter jurisdiction over this claim. *Zelaya*, 781 F.3d at 1322.

The FTCA excepts from its general waiver of immunity "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights." 28 U.S.C. § 2680(h). Although outrage/intentional infliction of emotional distress is not mentioned in this list, thanks to the "arising out of" language even an unlisted tort will fall within the exception "if the governmental conduct that is essential to the plaintiff's cause of action is encompassed by that tort." *Zelaya*, 781 F.3d at 1333; *accord Gonzalez-Jiminez de Ruiz v. United States*, 378 F.3d 1229, 1231 n.2 (11th Cir. 2004); *JBP Acquisitions, LP v. United States ex rel. Federal Deposit Insurance Corp.*, 224 F.3d 1260, 1264 (11th Cir. 2000); *Metz v. United States*, 788 F.2d 1528, 1534 (11th Cir. 1986).

In order to determine whether KML's outrage claim is barred, therefore, an examination of the governmental conduct essential to her claim must be undertaken. The complaint identifies the following governmental conduct as underlying the outrage claim: (1) the chief judge that had previously harassed

---

[3] "The immunity of the sovereign … extends to its agencies … and the officers of these agencies" when sued in their official capacities. *Simons v. Vinson*, 394 F.2d 732, 736 (5th Cir. 1968); *Nalls v. Bureau of Prisons*, 359 Fed. Appx. 99, 101 (11th Cir. 2009); *Ishler v. Internal Revenue*, 237 Fed. Appx. 394, 397 (11th Cir. 2007).

KML was moved to an office next door to hers; (2) KML could not rely on her legal assistant – an ally of her harasser – to perform the legal assistant's duties, such that KML performed such duties (such as purchasing rubber stamps) for several months; (3) KML was denied a reasonable accommodation for a medical condition, forcing her to resign in order to safeguard her health; (4) KML's health insurance was canceled prematurely, causing her to miss chemotherapy and to delay surgery; (5) KML's request for severance pay as per governmental policy has not been addressed; and (6) the government actors knew of KML's fragile condition and that their conduct would threaten her health and life. The actors were motivated by retaliation for KML's pre-settlement conduct in reporting fraud within the agency. (Doc. 1-1 at 6-9).

It is certainly possible for an outrage claim to rely on conduct encompassed by a tort listed in Section 2680(h). In *Metz*, the Eleventh Circuit ruled that the plaintiffs' claims for intentional infliction of emotional distress under Georgia law fell within that provision because the governmental conduct essential to their claim arose from an alleged false arrest and slander – both of which torts are listed in Section 2680(h). 788 F.2d at 1534-35; *see also Gonzalez-Jiminez*, 378 F.3d at 1231 n.2 ("[I]f the plaintiffs' allegations of deceit are essential to their intentional infliction of emotional distress claim, we lack jurisdiction under the FTCA to entertain that claim."). Here, however, the defendant has not explained, and the Court does not discern, how the governmental conduct alleged in support of KML's outrage claim could show that her claim arises from battery, slander, deceit or any other listed tort.

**B. Preemption.**

"Under the Civil Service Reform Act of 1978 ["CSRA"]…, certain federal employees may obtain administrative and judicial review of specified adverse employment actions." *Elgin v. Department of Treasury*, 567 U.S. 1, 5 (2012). The defendant argues that the CSRA provides KML's exclusive recourse and

preempts her outrage claim. KML concedes she is or was a federal employee to whom the CSRA applies but denies that her tort claim is precluded by the CSRA.

"[W]here … an employee challenges personnel actions within the scope of the Act's coverage under state law, those challenges are preempted by the CSRA." *Broughton v. Courtney*, 861 F.2d 639, 644 (11th Cir. 1988). At least when the adverse action: (1) is by an employee with "authority to take, direct others to take, recommend, or approve any personnel action" under 5 U.S.C. § 2302(b); (2) constitutes a "personnel action" under Section 2302(a)(2); and (3) was taken for a reason constituting a "prohibited personnel practice" under Section 2302(a)(1) and (b), the CSRA preempts a state law claim based on the action. *Id*.

With respect to the first requirement, the plaintiffs admit that "the Outrage claim is based on conduct of various SSA employees who were acting within the line and scope of their duty." (Doc. 22 at 6).

With respect to the second requirement, "[p]ersonnel actions" include "any … significant change in duties, responsibilities, or working conditions." 5 U.S.C. § 2302(a)(2). The complaint affirmatively asserts that moving KML's harasser next door to her "changed [her] working conditions to a level which she could not tolerate." (Doc. 1-1 at 6). The complaint likewise expressly alleges that KML's "working conditions changed drastically" by having a legal assistant allied with her harasser. (*Id*.).

With respect to the third requirement, a "prohibited personnel practice" includes taking or failing to take a personnel action due to: (1) an employee's disclosure of information she reasonably believes evidences a violation of law, rule or regulation, gross mismanagement, gross waste of funds or an abuse of authority (if disclosure is not prohibited by law or in the interest of national defense or the conduct of foreign affairs); or (2) the employee's exercise of any appeal, complaint or grievance right. 5 U.S.C. § 2302(b)(8), (9). The complaint alleges that the actors were motivated by retaliation for KML's pre-settlement conduct in reporting fraud within the agency. (Doc. 1-1 at 8).

5

In summary, to the extent KML's outrage claim is based on her harasser's proximity and the unreliability of her legal assistant, it appears likely that the claim is preempted by the CSRA. The defendant does not address the remaining conduct on which KML's outrage claim is based – denial of reasonable accommodation, premature cessation of health insurance and failure to address severance pay. On the contrary, the defendant concedes that only the "bulk" of the conduct challenged by KML is subject to CSRA preemption, with KML's "chie[f] complain[t]s" being the proximity of her harasser and the unreliability of her legal assistant. (Doc. 16 at 8). The Court understands these statements as acknowledging that other portions of the outrage claim are not subject to CSRA preemption.[4] Because, as discussed in Part I.C, KML's outrage claim must be dismissed for failure to exhaust her administrative remedies, the Court pretermits further consideration of the defendant's preemption argument and the plaintiffs' response.

**C. Exhaustion.**

A state law tort action permitted under the FTCA "shall not be instituted" before the claimant has "presented the claim to the appropriate Federal agency and his claim [has] been finally denied by the agency in writing" or, at the claimant's option, has been unresolved for at least six months after being filed. 28 U.S.C. § 2675(a). "Because the FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies, the district court lacks subject matter jurisdiction over prematurely filed suits." *Turner ex rel. Turner v.*

---

[4] The defendant suggests that CSRA preemption applies whenever a "prohibited personnel practice" is implicated, even if the practice does not concern a "personnel action." (Doc. 16 at 9). This does not seem possible with respect to the only prohibited personnel practices implicated here, since they are by their terms limited to "personnel action[s]" taken or not taken for the prohibited reason. 5 U.S.C. § 2302(b)(8), (9). Certainly *Broughton*, on which the defendant relies, does not support her position. *See* 861 F.2d at 644 ("*A prohibited personnel practice is a personnel action* which is taken for a prohibited purpose.") (emphasis added, internal quotes omitted).

6

*United States*, 514 F.3d 1194, 1200 (11th Cir. 2008) (internal quotes omitted); *accord Barnett v. Okeechobee Hospital*, 283 F.3d 1232, 1237 (11th Cir. 2002).

The complaint does not allege that KML presented a claim to SSA or that the claim was denied formally or by passage of time. The defendant has submitted the declaration of SSA's FTCA team leader for the proposition that the plaintiffs have submitted no administrative tort claim as required by Section 2675(a).[5] KML has filed an affidavit in response to the defendant's motion to dismiss, but it is silent regarding any submission of a claim under Section 2675(a). (Docs. 24-26). Nor do the plaintiffs assert in brief that a clam was ever submitted.

It is thus uncontroverted that the plaintiffs have not complied with Section 2675(a) and therefore have not exhausted their administrative remedies. Due to their failure, the Court lacks subject matter jurisdiction over KML's outrage claim.[6]

KML offers three objections, all without merit. First, she argues that the conduct on which her outrage claim is based is "not related to personnel actions which would be covered by the FTCA." (Doc. 22 at 7). The FTCA, however, is not limited in scope to suits by employees, much less to suits over personnel actions. 28 U.S.C. §§ 1346(b), 2674.

Second, KML argues that the defendant has mounted only a facial attack on jurisdiction and thus cannot resort to material beyond the face of the complaint. (Doc. 22 at 3). KML is mistaken. The defendant in her brief notes the difference between facial and factual attacks on jurisdiction and explicitly asserts that

---

[5] The declarant directs the activities of SSA employees responsible for receiving investigating, processing and adjudicating such claims. He also causes records concerning such claims to be maintained in the ordinary course of business, and complete records of such claims are in fact maintained. A search of those records reveals no administrative tort claim filed against SSA by either plaintiff or anyone on their behalf. (Doc. 16-3).

[6] Because the defendant does not address whether the plaintiffs' failure to exhaust administrative remedies is capable of cure, dismissal of Count I will be without prejudice.

7

"Plaintiffs' Complaint is subject to dismissal on its face *and* based on the declarations submitted in support of this motion." (Doc. 16 at 3 (emphasis added)).[7]

Third, KML proposes that any ruling on subject matter jurisdiction be postponed pending discovery, on the grounds that the jurisdictional issue is "inextricably intertwined" with the merits of her claim. (Doc. 22 at 6). On the contrary, whether the plaintiffs submitted an administrative tort claim to SSA is completely independent of whether KML has a meritorious claim of outrage. Nor is it easy to imagine what discovery the plaintiffs could require in order to show they complied with Section 2675(a), since it is within their own personal knowledge whether they did so.

## II. Employer's Liability Act.

The plaintiffs concede that Count II is due to be dismissed. (Doc. 22 at 10).

## III. Breach of Contract.

The defendant argues that Count III is due to be dismissed on grounds of immunity and failure to exhaust administrative remedies. The Court finds the first argument to be dispositive.[8]

---

[7] There is no question but that a defendant may raise non-compliance with Section 2675(a) as a factual attack on subject matter jurisdiction. *E.g., Barnett*, 283 F.3d at 1237-38.

[8] In an abundance of caution, the defendant argues that any post-Agreement claims under Title VII or the Rehabilitation Act have not been exhausted by resort to the governing administrative procedures. (Doc. 16 at 16-17). While it does mention certain post-Agreement conduct that might support a claim under those statutes, the complaint asserts no cause of action under these or any other statutes; the claims advanced in the complaint are limited to those addressed in text.

The Agreement settled KML's EEO claims. (Doc. 1-1 at 6; Doc. 16-1 at 2-3). As relief for breach of the Agreement, the complaint seeks compensatory and punitive damages. (Doc. 1-1 at 15).

"Congress has, admittedly, waived sovereign immunity in Title VII suits where the federal government is the employer." *Frahm v. United States*, 492 F.3d 258, 262 (4th Cir. 2007). "However, this statutory waiver does not expressly extend to monetary claims against the government for breach of a settlement agreement that resolves a Title VII dispute." *Id*. Because only an unequivocal waiver of sovereign immunity will suffice, Title VII does not waive immunity with respect to such claims. *Id*.; *accord Taylor v. Geithner*, 703 F.3d 328, 333-35 (6th Cir. 2013); *Munoz v. Mabus*, 630 F.3d 856, 860-61 (9th Cir. 2010); *Lindstrom v. United States*, 510 F.3d 1191, 1195 (10th Cir. 2007). Nor do the regulations promulgated thereunder. *Taylor*, 703 F.3d at 335; *Mabus*, 630 F.3d at 861-63; *Lindstrom*, 510 F.3d at 1195.[9] The same goes for the Rehabilitation Act. *Id*. at 1194.[10] And, to the extent the Agreement itself could work a waiver of sovereign immunity by providing for suit in case of breach, *Frahm*, 492 F.3d at 262, it does not do so. (Doc. 16-1).

The Eleventh Circuit apparently has issued no published opinion comparable to those from the Fourth, Sixth, Ninth and Tenth Circuits, but the plaintiffs offer no reason to believe it would reach any different conclusion. Nor do they disagree with the defendant's characterization of *Thompson v. McHugh*, 388 Fed. Appx. 870 (11th Cir. 2010), as standing for a similar proposition. (Doc.

---

[9] Those regulations envision only administrative consideration of claims that an agency has failed to comply with the terms of a settlement agreement, with the only favorable outcome being an administrative order either to comply with the settlement agreement or reinstating the employee's administrative complaint for further processing. 29 C.F.R. § 1614.504; *see also Frahm*, 492 F.3d at 262-63 ("By its plain language, [Section 1614.504] sets out the only alternatives that may be chosen.").

[10] The defendant indicates that one or more of KML's EEO charges implicated the Rehabilitation Act. (Doc. 16 at 2, 14).

16 at 14). In *Thompson*, the Court ruled that neither Title VII nor regulations promulgated thereunder waive sovereign immunity with respect to claims for rescission of a settlement agreement. *Id*. at 872-73. The Fifth Circuit in *Charles v. McHugh*, 613 Fed. Appx. 330 (5th Cir. 2015), has agreed with *Thompson* on the grounds that claims for settlement agreement rescission are of a piece with claims for settlement agreement breach – both are contract claims as to which the United States has not waived its sovereign immunity. *Id*. at 334-35.

The plaintiffs, while addressing at length the defendant's exhaustion argument, are silent regarding the threshold issue of sovereign immunity. For the reasons stated above, the Court concludes that KML's contract claim is barred by that doctrine.[11]

## IV. Loss of Consortium.

"A loss-of-consortium claim is derivative of the claims of the injured spouse. Therefore, [William's] loss-of-consortium claim must fail if [KML's] claims fail." *Flying J. Fish Farm v. Peoples Bank*, 12 So. 3d 1185, 1196 (Ala. 2008); *accord Lyons v. Vaughan Regional Medical Center, LLC*, 23 So. 3d 23, 29 (Ala. 2009). Because KML's claims fail, William's claim also must fail.

The plaintiffs suggest that William's claim should be analyzed independently of KML's claims. (Doc. 22 at 9). Because his claim is derivative of hers, that approach is erroneous, but it would not assist him in any event. The plaintiffs' only argument is that the FTCA does not bar claims for loss of consortium. (*Id*.). If that assertion is correct, it defeats the defendant's invocation of sovereign immunity. *See* Part I.A, *supra*. It does not, however, address or defeat her invocation of failure to exhaust administrative remedies. *See* Part I.C, *supra*. As noted therein, it is uncontroverted that neither KML nor William submitted a claim to SSA. *See* note 5, *supra*. Because William did not exhaust

---

[11] Because the plaintiffs cannot avoid that bar, dismissal of Count III will be with prejudice.

his administrative remedies, the Court would lack jurisdiction over his claim even if it could properly be analyzed independently of KML's claims.[12]

## CONCLUSION

For the reasons set forth above, the motion to dismiss is **granted**. This action as to the named defendant is **dismissed**. As to the named defendant only, Counts I and IV are **dismissed without prejudice**, and Count III is **dismissed with prejudice**. As to all defendants, Count II is **dismissed with prejudice**.

DONE and ORDERED this 15th day of May, 2018.

s/ WILLIAM H. STEELE  
UNITED STATES DISTRICT JUDGE

---

[12] Because it is derivative of Count I, and because Count I is to be dismissed without prejudice, Count IV likewise will be dismissed without prejudice.